UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

JPMORGAN CHASE BANK, N.A.,

Plaintiff,

- against -

ENGINEERED BUILDING PRODUCTS, INC., ASCAPE LANDSCAPE AND CONSTRUCTION CORP., ALL ELECTRIC CONSTRUCTION AND COMMUNICATION, LLC, TRI-STAR BUILDING CORP., AMEC COMMERCIAL, LLC, INNOVATIVE STRUCTURAL GLASS, INC., KURITZKY GLASS CO., INC., CONNECTICUT MASON CONTRACTORS, INC., ZODIAC INDUSTRIES, INC., ITILE GROUP, INC., PREMIUM DECORATING, LLC, ELITE INTERIOR SYSTEMS, INC., BARRETT, INC., ALCAIDE INC., d/b/a A&J CONSTRUCTION, UNITED METALS & GLASS, INC., and FRANCHISE CONTRACTORS, LLC,

Defendants.

--------------------------------------------------------------------X

**ANSWER WITH COUNTER- AND CROSS-CLAIMS**

Docket No.:
15-cv-9097 (CS)

Defendants ALL ELECTRIC CONSTRUCTION AND COMMUNICATION, LLC ("All Electric"), AMEC COMMERCIAL, LLC ("AMEC"), ASCAPE LANDSCAPE AND CONSTRUCTION CORP. ("Ascape") and KURITZKY GLASS CO., INC. ("Kuritzky"; hereinafter collectively the "Answering Defendants"), by their attorneys Welby, Brady & Greenblatt, LLP, as and for their Answer to the Amended Interpleader Complaint of plaintiff JPMORGAN CHASE BANK, N.A. ("Chase") and their Counter- and Cross-Claims, respectfully allege as follows:

## ANSWERING THE AMENDED INTERPLEADER COMPLAINT

1. The Answering Defendants, upon information and belief, admit the allegations contained in Paragraph 1 of the Amended Interpleader Complaint.

2. The Answering Defendants deny the allegations contained in Paragraph 2 of the Amended Interpleader Complaint.

3. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 3 of the Amended Interpleader Complaint.

4. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 4 of the Amended Interpleader Complaint.

5. The Answering Defendants admit the allegations contained in Paragraph 5 of the Amended Interpleader Complaint.

6. The Answering Defendants admit the allegations contained in Paragraph 6 of the Amended Interpleader Complaint.

7. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 7 of the Amended Interpleader Complaint.

8. The Answering Defendants admit the allegations contained in Paragraph 3 of the Amended Interpleader Complaint.

9. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 9 of the Amended Interpleader Complaint.

10. The Answering Defendants admit the allegations contained in Paragraph 10 of the Amended Interpleader Complaint.

11. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 11 of the Amended Interpleader Complaint.

12. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 12 of the Amended Interpleader Complaint.

13. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 13 of the Amended Interpleader Complaint.

14. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 14 of the Amended Interpleader Complaint.

15. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 15 of the Amended Interpleader Complaint.

16. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 16 of the Amended Interpleader Complaint.

17. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 17 of the Amended Interpleader Complaint.

18. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 18 of the Amended Interpleader Complaint.

19. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 19 of the Amended Interpleader Complaint.

20. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 20 of the Amended Interpleader Complaint.

21. The Answering Defendants deny the allegations contained in Paragraph 21 of the Amended Interpleader Complaint and respectfully refer all questions of law raised therein to this Court for determination.

22. The Answering Defendants deny the allegations contained in Paragraph 22 of the Amended Interpleader Complaint and respectfully refer all questions of law raised therein to this Court for determination.

23. The Answering Defendants deny the allegations contained in Paragraph 23 of the Amended Interpleader Complaint and respectfully refer all questions of law raised therein to this Court for determination.

24. The Answering Defendants, upon information and belief, admit the allegations contained in Paragraph 24 of the Amended Interpleader Complaint.

25. The Answering Defendants, upon information and belief, admit the allegations contained in Paragraph 25 of the Amended Interpleader Complaint.

26. The Answering Defendants, upon information and belief, admit the allegations contained in Paragraph 26 of the Amended Interpleader Complaint.

27. The Answering Defendants deny having knowledge or information sufficient to form a belief about the allegations contained in Paragraph 27 of the Amended Interpleader Complaint.

28. The Answering Defendants, upon information and belief, admit the allegations contained in Paragraph 28 of the Amended Interpleader Complaint.

29. The Answering Defendants admit the allegations contained in Paragraph 29 of the Amended Interpleader Complaint as of the date the Amended Interpleader Complaint was filed.

30. The Answering Defendants deny the allegations contained in Paragraph 30 of the Amended Interpleader Complaint and respectfully refer all questions of law raised therein to this Court for determination.

31. The Answering Defendants deny the allegations contained in Paragraph 31 of the Amended Interpleader Complaint.

32. As to Paragraph 32 of the Amended Interpleader Complaint, the Answering Defendants repeat, reallege and reassert each and every response set forth above as if fully set forth herein.

33. The Answering Defendants deny the allegations contained in Paragraph 33 of the Amended Interpleader Complaint.

34. The Answering Defendants deny the allegations contained in Paragraph 34 of the Amended Interpleader Complaint.

35. The Answering Defendants deny the allegations contained in Paragraph 35 of the Amended Interpleader Complaint.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

36. The Amended Interpleader Complaint fails to state a cause of action.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

37. The Stake which the plaintiff seeks to deposit into Court constitutes a "Lienable Fund" under Connecticut Law and, thus, all disputes regarding or relating thereto must be decided under Connecticut Law by Connecticut Courts.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

38. The plaintiff's claims are barred by the doctrines or laches, waiver and/or estoppel.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

39. The Answering Defendants have a defense founded upon documentary evidence.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

40. The plaintiff has no claim to the Stake.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**

41. The plaintiff's asserted claim to the Stake is barred by the terms of the contract between it and defendant Franchise Contractors, LLC ("Franchise").

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE**

42. The plaintiff has unclean hands.

**AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE**

43. The plaintiff has understated the Stake.

**AS AND FOR A NINTH AFFIRMATIVE DEFENSE**

44. The plaintiff has failed to invoke this Court's jurisdiction.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

45. The plaintiff's deposit into Court is inadequate.

## FACTS RELEVANT TO ALL COUNTER- AND CROSS-CLAIMS

46. Franchise was the general contractor to the plaintiff for the construction of a branch of the plaintiff's bank in Greenwich, Connecticut (the "Project").

47. Each of the Answering Defendants, All Electric, AMEC, Ascape and Kuritzky, entered into separate written subcontracts with Franchise to perform various scopes of work necessary for the completion of the Project, as more particularly described in each subcontract.

48. Subsequent to the execution of the above subcontracts, each of the Answering Defendants, All Electric, AMEC, Ascape and Kuritzky, undertook the performance of their obligations under their respective subcontracts in strict and full accordance with the terms stated therein.

49. Neither Franchise nor Chase have lodged any objection to the quality of any of All Electric's, AMEC's, Ascape's or Kuritzky's work, and both have fully accepted that work as being completed in conformance with the requirements of the respective subcontracts.

50. All of the services and materials provided by All Electric, AMEC, Ascape and Kuritzky work have been incorporated into Chase's building at the Project, and Chase and the property at the Project have received the full benefit thereof.

51. At the time All Electric completed its work at the Project, Franchise had a balance due and owing to All Electric of approximately Seventy-Four Thousand Five Hundred and Eighty-Three and 75/100 ($74,583.75) Dollars, none of which has been paid despite due demand therefor.

52. At the time AMEC completed its work at the Project, Franchise had a balance due and owing to AMEC of approximately Seventy-Eight Thousand Nine Hundred and Eighty-Three and 60/100 ($78,983.60) Dollars, none of which has been paid despite due demand therefor.

53. At the time Ascape completed its work at the Project, Franchise had a balance due and owing to Ascape of approximately Forty-Five Thousand Eight Hundred and Seventeen and 00/100 ($45,817.00) Dollars, none of which has been paid despite due demand therefor.

54. At the time Kuritzky completed its work at the Project, Franchise had a balance due and owing to Kuritzky of approximately Fifty-Seven Thousand Six Hundred and Seventy-Eight and 00/100 ($57,678.00) Dollars, none of which has been paid despite due demand therefor.

55. In order to secure its right to payment in the amount of $74,583.75, on or about May 1, 2015, and pursuant to the provisions of the Connecticut General Statutes, All Electric claimed a lien on property comprising the Project by filing with the Town Clerk of the Town of Greenwich a Certificate of Mechanic's Lien on the Town of Greenwich Land Records. A copy of All Electric's mechanic's lien is attached hereto as Exhibit A.

56. In order to secure its right to payment in the amount of $78,983.60, on or about January 13, 2015, and pursuant to the provisions of the Connecticut General Statutes, AMEC claimed a lien on property comprising the Project by filing with the Town Clerk of the Town of Greenwich a Certificate of Mechanic's Lien on the Town of Greenwich Land Records. A copy of AMEC's mechanic's lien is attached hereto as Exhibit B.

57. In order to secure its right to payment in the amount of $45,817.00, on or about May 1, 2015, and pursuant to the provisions of the Connecticut General Statutes, Ascape claimed a lien on property comprising the Project by filing with the Town Clerk of the Town of

Greenwich a Certificate of Mechanic's Lien on the Town of Greenwich Land Records. A copy of Ascape's mechanic's lien is attached hereto as Exhibit C.

58. In order to secure its right to payment in the amount of $57,678.00, on or about March 6, 2015, and pursuant to the provisions of the Connecticut General Statutes, Kuritzky claimed a lien on property comprising the Project by filing with the Town Clerk of the Town of Greenwich a Certificate of Mechanic's Lien on the Town of Greenwich Land Records. A copy of Kuritzky's mechanic's lien is attached hereto as Exhibit D.

59. To protect their own rights to payment, co-defendants Connecticut Mason Contractors, Inc., Elite Interiors Systems, Inc., Engineered Building Products, Inc., Innovative Structural Glass, Inc., Tri-Star Building Corp., Itile Group, Inc., Zodiac Industries, Inc. and Premium Decorating, LLC, have also claimed respective mechanic's liens against the Project property by making appropriate filings with the Town Clerk of the Town of Greenwich within the 90 day window within which to do so.

60. No other defendant has filed a mechanic's lien against the Project property, and the time within which to do so has passed, thus foreclosing the possibility that any non-lienor defendant can now assert a mechanic's lien and take a share of the statutory Lienable Fund.

61. Each defendant in this action has made a claim against co-defendant Franchise which, when combined, total over $1.26 million.

62. The liens securing the claims of the lienor defendants against co-defendant Franchise, when combined, total the sum of $831,588.60.

63. The plaintiff alleges that the maximum amount it could owe to defendant Franchise under the prime contract is $780,707.11. Further, the plaintiff claims entitlement to a reduction of that sum based on backcharges for "substituted systems".

64. While the plaintiff's claims as to both the maximum amount it could owe to defendant Franchise under the prime contract and its backcharges are vigorously disputed and in no way conceded, it is clear that a dispute exists by and between the plaintiff, these Answering Defendants, the other lienor co-defendants, the non-lienor co-defendants and defendant Franchise as to the rights and liabilities of each arising from the Project as it relates to the Stake.

65. As the Project was located in Connecticut, pursuant to Section 42-158m of Connecticut General Statutes, Connecticut law governs this dispute and all claims to the Stake.

66. Pursuant to Section 49-33 *et. seq.* of Connecticut General Statutes, the Stake constitutes a "Lienable Fund", and exists for the benefit of those who have duly filed mechanic's liens against the Project property.

67. To the extent that the Stake/Lienable Fund is not sufficient to satisfy the claims of those defendants which have duly filed mechanic's liens against the Project property, then any defendants which failed to file such liens are foreclosed from recovery against the Stake/Lienable Fund.

**AS AND FOR A FIRST COUNTER- AND CROSS-CLAIM**
**(Seeking Declaratory Judgment in Favor of All Electric)**

68. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 67, above, as if fully set forth at length herein.

69. Defendant All Electric is entitled to a judgment pursuant to 28 USC §§ 2201, 2202 declaring that the Stake constitutes a Lienable Fund, and declaring and determining that its claim to the Stake is in the amount of $74,583.75.

70. Defendant All Electric is further entitled to a declaration that its interest in the Stake is equal in proportion to the other defendants that have filed mechanic's liens against the Project property, and superior and prior to those of the co-defendants which failed to do so or, at a minimum, equal to the interests of any other claimants to the Stake.

71. Upon such declaration, All Electric is entitled to recover from the Stake in the amount of its claim and, if the Stake is not sufficient to satisfy all claims, then paying its claim *pro rata* with the other lienor defendants to the amount of their mechanic's liens, and foreclosing all non-lienor and other defendants from having any claim to or recovery from the Stake.

72. All Electric is further entitled to an accounting of the Project from the plaintiff to determine the proper calculation of the Stake and the amount which should be on deposit with the Court.

**AS AND FOR A SECOND COUNTER- AND CROSS-CLAIM**
**(Seeking Declaratory Judgment in Favor of AMEC)**

73. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 72, above, as if fully set forth at length herein.

74. Defendant AMEC is entitled to a judgment pursuant to 28 USC §§ 2201, 2202 declaring that the Stake constitutes a Lienable Fund, and declaring and determining that its claim to the Stake is in the amount of $78,983.60.

75. Defendant AMEC is further entitled to a declaration that its interest in the Stake is equal in proportion to the other defendants that have filed mechanic's liens against the Project property, and superior and prior to those of the co-defendants which failed to do so or, at a minimum, equal to the interests of any other claimants to the Stake.

76. Upon such declaration, AMEC is entitled to recover from the Stake in the amount of its claim and, if the Stake is not sufficient to satisfy all claims, then paying its claim *pro rata* with the other lienor defendants to the amount of their mechanic's liens, and foreclosing all non-lienor and other defendants from having any claim to or recovery from the Stake.

77. AMEC is further entitled to an accounting of the Project from the plaintiff to determine the proper calculation of the Stake and the amount which should be on deposit with the Court.

## AS AND FOR A THIRD COUNTER- AND CROSS-CLAIM
**(Seeking Declaratory Judgment in Favor of Ascape)**

78. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 77, above, as if fully set forth at length herein.

79. Defendant Ascape is entitled to a judgment pursuant to 28 USC §§ 2201, 2202 declaring that the Stake constitutes a Lienable Fund, and declaring and determining that its claim to the Stake is in the amount of $45,817.00.

80. Defendant Ascape is further entitled to a declaration that its interest in the Stake is equal in proportion to the other defendants that have filed mechanic's liens against the Project property, and superior and prior to those of the co-defendants which failed to do so or, at a minimum, equal to the interests of any other claimants to the Stake.

81. Upon such declaration, Ascape is entitled to recover from the Stake in the amount of its claim and, if the Stake is not sufficient to satisfy all claims, then paying its claim *pro rata* with the other lienor defendants to the amount of their mechanic's liens, and foreclosing all non-lienor and other defendants from having any claim to or recovery from the Stake.

82. Ascape is further entitled to an accounting of the Project from the plaintiff to determine the proper calculation of the Stake and the amount which should be on deposit with the Court.

## <u>AS AND FOR A FOURTH COUNTER- AND CROSS-CLAIM</u>
## (Seeking Declaratory Judgment in Favor of Kuritzky)

83. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 82, above, as if fully set forth at length herein.

84. Defendant Kuritzky is entitled to a judgment pursuant to 28 USC §§ 2201, 2202 declaring that the Stake constitutes a Lienable Fund, and declaring and determining that its claim to the Stake is in the amount of $57,678.00.

85. Defendant Kuritzky is further entitled to a declaration that its interest in the Stake is equal in proportion to the other defendants that have filed mechanic's liens against the Project property, and superior and prior to those of the co-defendants which failed to do so or, at a minimum, equal to the interests of any other claimants to the Stake.

86. Upon such declaration, Kuritzky is entitled to recover from the Stake in the amount of its claim and, if the Stake is not sufficient to satisfy all claims, then paying its claim *pro rata* with the other lienor defendants to the amount of their mechanic's liens, and foreclosing all non-lienor and other defendants from having any claim to or recovery from the Stake.

87. Kuritzky is further entitled to an accounting of the Project from the plaintiff to determine the proper calculation of the Stake and the amount which should be on deposit with the Court.

**AS AND FOR A FIFTH COUNTER- AND CROSS-CLAIM**
**(Foreclosing All Electric's Mechanic's Lien as Against the Stake, as Substitute Security)**

88. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 87, above, as if fully set forth at length herein.

89. By Order dated February 11, 2016 and entered February 16, 2016, in anticipation of all claims to the lienable fund/Stake being adjudicated in this Court, this Court entered an injunction enjoining All Electric from prosecuting the foreclosure of its mechanic's lien in the Superior Court of the State of Connecticut.

90. By virtue of the due assertion of its mechanic's lien, and by virtue of this Court's effective substitution of the Stake for the lien which All Electric sought to foreclose in Superior Court, All Electric is entitled to have that lien foreclosed in this Court as against the Stake, as substitute security in the amount of $74,583.75.

**AS AND FOR A SIXTH COUNTER- AND CROSS-CLAIM**
**(Foreclosing AMEC's Mechanic's Lien as Against the Stake, as Substitute Security)**

91. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 90, above, as if fully set forth at length herein.

92. By Order dated February 11, 2016 and entered February 16, 2016, in anticipation of all claims to the lienable fund/Stake being adjudicated in this Court, this Court entered an injunction enjoining AMEC from prosecuting the foreclosure of its mechanic's lien in the Superior Court of the State of Connecticut.

93. By virtue of the due assertion of its mechanic's lien, and by virtue of this Court's effective substitution of the Stake for the lien which AMEC sought to foreclose in Superior

Court, AMEC is entitled to have that lien foreclosed in this Court as against the Stake, as substitute security, in the amount of $78,983.60.

**AS AND FOR A SEVENTH COUNTER- AND CROSS-CLAIM**
**(Foreclosing Ascape's Mechanic's Lien as Against the Stake, as Substitute Security)**

94. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 93, above, as if fully set forth at length herein.

95. By Order dated February 11, 2016 and entered February 16, 2016, in anticipation of all claims to the lienable fund/Stake being adjudicated in this Court, this Court entered an injunction enjoining Ascape from prosecuting the foreclosure of its mechanic's lien in the Superior Court of the State of Connecticut.

96. By virtue of the due assertion of its mechanic's lien, and by virtue of this Court's effective substitution of the Stake for the lien which Ascape sought to foreclose in Superior Court, Ascape is entitled to have that lien foreclosed in this Court as against the Stake, as substitute security, in the amount of $45,817.00.

**AS AND FOR AN EIGHTH COUNTER- AND CROSS-CLAIM**
**(Foreclosing Kuritzky's Mechanic's Lien as Against the Stake, as Substitute Security)**

97. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 96, above, as if fully set forth at length herein.

98. By Order dated February 11, 2016 and entered February 16, 2016, in anticipation of all claims to the lienable fund/Stake being adjudicated in this Court, this Court entered an injunction enjoining Kuritzky from prosecuting the foreclosure of its mechanic's lien in the Superior Court of the State of Connecticut.

99. By virtue of the due assertion of its mechanic's lien, and by virtue of this Court's effective substitution of the Stake for the lien which Kuritzky sought to foreclose in Superior Court, Kuritzky is entitled to have that lien foreclosed in this Court as against the Stake, as substitute security, in the amount of $57,678.00.

**AS AND FOR A NINTH COUNTER- AND CROSS-CLAIM**
**(Breach of Contract, All Electric v. Franchise)**

100. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 99, above, as if fully set forth at length herein.

101. Under the terms of its subcontract with All Electric, Franchise agreed to pay All Electric for its materials and the services it rendered to the Project.

102. All Electric thereupon undertook the performance of its work and services pursuant to its subcontract without objection from either Chase or Franchise.

103. Notwithstanding the performance of All Electric, Franchise breached its subcontract with All Electric in one or more of the following ways:

a. Franchise failed to make timely payments to All Electric, as required by the subcontract;

b. Franchise failed to timely approve change order as required by the subcontract;

c. Franchise failed to provide timely direction regarding work to be performed pursuant to the terms of the subcontract; and

d. Franchise failed to comply with several material terms of the subcontract.

104. As a result of the failure of Franchise to issue required payments to All Electric, All Electric was forced to expend its own funds in furtherance of the Project.

105. Despite repeated requests to Franchise for payment, Franchise has wrongfully withheld payment from All Electric.

106. Presently, All Electric is owed monies for work and materials furnished by All Electric to Franchise.

107. As a result of base contract work, change orders and/or extra work performed at the specific request and instance of Franchise for which All Electric has not been paid, the sum of $74,583.75 is due and owing to All Electric by Franchise, none of which has been paid despite due demand therefor.

108. By reason of the foregoing, All Electric has been damaged in the amount of $74,583.75, together with interest thereon.

**AS AND FOR A TENTH COUNTER- AND CROSS-CLAIM**
**(Breach of Contract, AMEC v. Franchise)**

109. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 108, above, as if fully set forth at length herein.

110. Under the terms of its subcontract with AMEC, Franchise agreed to pay AMEC for its materials and the services it rendered to the Project.

111. AMEC thereupon undertook the performance of its work and services pursuant to its subcontract without objection from either Chase or Franchise.

112. Notwithstanding the performance of AMEC, Franchise breached its subcontract with AMEC in one or more of the following ways:

a. Franchise failed to make timely payments to AMEC, as required by the subcontract;

b. Franchise failed to timely approve change order as required by the subcontract;

c. Franchise failed to provide timely direction regarding work to be performed pursuant to the terms of the subcontract; and

d. Franchise failed to comply with several material terms of the subcontract.

113. As a result of the failure of Franchise to issue required payments to AMEC, AMEC was forced to expend its own funds in furtherance of the Project.

114. Despite repeated requests to Franchise for payment, Franchise has wrongfully withheld payment from AMEC.

115. Presently, AMEC is owed monies for work and materials furnished by AMEC to Franchise.

116. As a result of base contract work, change orders and/or extra work performed at the specific request and instance of Franchise for which AMEC has not been paid, the sum of $78,983.60 is due and owing to AMEC by Franchise, none of which has been paid despite due demand therefor.

117. By reason of the foregoing, AMEC has been damaged in the amount of $78,983.60, together with interest thereon.

**AS AND FOR AN ELEVENTH COUNTER- AND CROSS-CLAIM**
**(Breach of Contract, Ascape v. Franchise)**

118. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 117, above, as if fully set forth at length herein.

119. Under the terms of its subcontract with Ascape, Franchise agreed to pay Ascape for its materials and the services it rendered to the Project.

120. Ascape thereupon undertook the performance of its work and services pursuant to its subcontract without objection from either Chase or Franchise.

121. Notwithstanding the performance of Ascape, Franchise breached its subcontract with Ascape in one or more of the following ways:

a. Franchise failed to make timely payments to Ascape, as required by the subcontract;

b. Franchise failed to timely approve change order as required by the subcontract;

c. Franchise failed to provide timely direction regarding work to be performed pursuant to the terms of the subcontract; and

d. Franchise failed to comply with several material terms of the subcontract.

122. As a result of the failure of Franchise to issue required payments to Ascape, Ascape was forced to expend its own funds in furtherance of the Project.

123. Despite repeated requests to Franchise for payment, Franchise has wrongfully withheld payment from Ascape.

124. Presently, Ascape is owed monies for work and materials furnished by Ascape to Franchise.

125. As a result of base contract work, change orders and/or extra work performed at the specific request and instance of Franchise for which Ascape has not been paid, the sum of $45,817.00 is due and owing to Ascape by Franchise, none of which has been paid despite due demand therefor.

126. By reason of the foregoing, Ascape has been damaged in the amount of $45,817.00, together with interest thereon.

**AS AND FOR A TWELFTH COUNTER- AND CROSS-CLAIM**
**(Breach of Contract, Kuritzky v. Franchise)**

127. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 126, above, as if fully set forth at length herein.

128. Under the terms of its subcontract with Kuritzky, Franchise agreed to pay Kuritzky for its materials and the services it rendered to the Project.

129. Kuritzky thereupon undertook the performance of its work and services pursuant to its subcontract without objection from either Chase or Franchise.

130. Notwithstanding the performance of Kuritzky, Franchise breached its subcontract with Kuritzky in one or more of the following ways:

a. Franchise failed to make timely payments to Kuritzky, as required by the subcontract;

b. Franchise failed to timely approve change order as required by the subcontract;

c. Franchise failed to provide timely direction regarding work to be performed pursuant to the terms of the subcontract; and

d. Franchise failed to comply with several material terms of the subcontract.

131. As a result of the failure of Franchise to issue required payments to Kuritzky, Kuritzky was forced to expend its own funds in furtherance of the Project.

132. Despite repeated requests to Franchise for payment, Franchise has wrongfully withheld payment from Kuritzky.

133. Presently, Kuritzky is owed monies for work and materials furnished by Kuritzky to Franchise.

134. As a result of base contract work, change orders and/or extra work performed at the specific request and instance of Franchise for which Kuritzky has not been paid, the sum of $57,678.00 is due and owing to Kuritzky by Franchise, none of which has been paid despite due demand therefor.

135. By reason of the foregoing, Kuritzky has been damaged in the amount of $57,678.00, together with interest thereon.

**AS AND FOR A THIRTEENTH COUNTER- AND CROSS-CLAIM**
**(Quantum Meruit, All Electric v. Chase and Franchise)**

136. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 135, above, as if fully set forth at length herein.

137. All Electric undertook to provide materials and services to the Project which it was not otherwise obligated to provide.

138. All Electric provided the foregoing materials and services with the reasonable expectation that it would be fairly paid therefor.

139. Franchise benefitted from the materials and services provided by All Electric in that these materials and services were required for Franchise to fulfil its own obligations to Chase pursuant to the prime contract.

140. Chase benefitted from the materials and services provided by All Electric in that these materials and services were improvements to Chase's leased real property, and these

materials and services were required for Chase to open its bank branch and realize the revenue to be derived therefrom.

141. Neither Franchise nor Chase have fully paid for the materials and services provided to the Project by All Electric.

142. The fair and reasonable value of the services provided by All Electric to the Project, after application of payments actually received, is $74,583.75.

143. As a result of the foregoing, All Electric has been damaged in the amount of $74,583.75, together with interest thereon.

**AS AND FOR A FOURTEENTH COUNTER- AND CROSS-CLAIM**
**(Quantum Meruit, AMEC v. Chase and Franchise)**

144. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 143, above, as if fully set forth at length herein.

145. AMEC undertook to provide materials and services to the Project which it was not otherwise obligated to provide.

146. AMEC provided the foregoing materials and services with the reasonable expectation that it would be fairly paid therefor.

147. Franchise benefitted from the materials and services provided by AMEC in that these materials and services were required for Franchise to fulfil its own obligations to Chase pursuant to the prime contract.

148. Chase benefitted from the materials and services provided by AMEC in that these materials and services were improvements to Chase's leased real property, and these materials

and services were required for Chase to open its bank branch and realize the revenue to be derived therefrom.

149. Neither Franchise nor Chase have fully paid for the materials and services provided to the Project by AMEC.

150. The fair and reasonable value of the services provided by AMEC to the Project, after application of payments actually received, is $78,983.60.

151. As a result of the foregoing, AMEC has been damaged in the amount of $78,983.60, together with interest thereon.

**AS AND FOR A FIFTEENTH COUNTER- AND CROSS-CLAIM**
**(Quantum Meruit, Ascape v. Chase and Franchise)**

152. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 151, above, as if fully set forth at length herein.

153. Ascape undertook to provide materials and services to the Project which it was not otherwise obligated to provide.

154. Ascape provided the foregoing materials and services with the reasonable expectation that it would be fairly paid therefor.

155. Franchise benefitted from the materials and services provided by Ascape in that these materials and services were required for Franchise to fulfil its own obligations to Chase pursuant to the prime contract.

156. Chase benefitted from the materials and services provided by Ascape in that these materials and services were improvements to Chase's leased real property, and these materials

and services were required for Chase to open its bank branch and realize the revenue to be derived therefrom.

157. Neither Franchise nor Chase have fully paid for the materials and services provided to the Project by Ascape.

158. The fair and reasonable value of the services provided by Ascape to the Project, after application of payments actually received, is $45,817.00.

159. As a result of the foregoing, Ascape has been damaged in the amount of $45,817.00, together with interest thereon.

**AS AND FOR A SIXTEENTH COUNTER- AND CROSS-CLAIM**
**(Quantum Meruit, Kuritzky v. Chase and Franchise)**

160. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 159, above, as if fully set forth at length herein.

161. Kuritzky undertook to provide materials and services to the Project which it was not otherwise obligated to provide.

162. Kuritzky provided the foregoing materials and services with the reasonable expectation that it would be fairly paid therefor.

163. Franchise benefitted from the materials and services provided by Kuritzky in that these materials and services were required for Franchise to fulfil its own obligations to Chase pursuant to the prime contract.

164. Chase benefitted from the materials and services provided by Kuritzky in that these materials and services were improvements to Chase's leased real property, and these

materials and services were required for Chase to open its bank branch and realize the revenue to be derived therefrom.

165. Neither Franchise nor Chase have fully paid for the materials and services provided to the Project by Kuritzky.

166. The fair and reasonable value of the services provided by Kuritzky to the Project, after application of payments actually received, is $57,678.00.

167. As a result of the foregoing, Kuritzky has been damaged in the amount of $57,678.00, together with interest thereon.

## AS AND FOR AN ANSWER TO CROSS-CLAIMS

168. The Answering Defendants repeat and reallege each and every one of the allegations contained in Paragraphs 1 through 167, above, as if fully set forth at length herein.

169. To the extent that any cross-claim asserted by any defendant makes any allegations which are inconsistent with the counter- and cross-claims asserted herein, those allegations are denied in their entirety.

170. These Answering Defendants reserve the right to separately answer any cross-claim addressed to any of their rights to, or interests in the Stake or the Lienable Fund, or as may otherwise be pled herein.

**WHEREFORE**, Defendants All Electric Construction and Communication, LLC, AMEC Commercial, LLC, Ascape Landscape and Construction Corp. and Kuritzky Glass Co., Inc. demand judgment as follows:

a. Dismissing the plaintiff's claim to any portion of the Stake;

b. Granting the defendants an accounting of the plaintiff's books and records of the Project to determine the accuracy of the amounts owed by the plaintiff to defendant Franchise under the prime contract for the Project, and requiring the plaintiff to deposit with the Court an amount sufficient to cover all claims made by the defendants against Franchise;

c. Declaring that the Stake constitutes a Lienable Fund;

d. Dismissing any claims or cross-claims alleging entitlement to any portion of the Stake asserted by any defendant that has not filed a Mechanic's Lien against the Project;

e. Declaring that the claims of those defendants which have filed Mechanic's Liens against the Project are superior and prior to those of all other defendants;

f. If the Stake is not sufficient to fully satisfy the claims of all defendants which have filed Mechanic's Liens against the Project, then foreclosing all other defendants from having any claim as against the Stake, and dismissing those claims in their entirety;

g. Determining the claims of all defendants and the priority thereof, based on the above;

h. Declaring that All Electric's legal and equitable share of the Stake is in the amount of $74,583.75 or, if the Stake is not sufficient to satisfy the claims of all defendants which have filed Mechanic's Liens against the Project, then declaring the extent of All Electric's claim in a *pro rata* amount with the other lienor defendants and no others;

i. Declaring that AMEC's legal and equitable share of the Stake is in the amount of $78,983.60 or, if the Stake is not sufficient to satisfy the claims of all defendants which have filed Mechanic's Liens against the Project, then declaring the extent of AMEC's claim in a *pro rata* amount with the other lienor defendants and no others;

j. Declaring that Ascape's legal and equitable share of the Stake is in the amount of $45,817.00 or, if the Stake is not sufficient to satisfy the claims of all defendants which have filed Mechanic's Liens against the Project, then declaring the extent of Ascape's claim in a *pro rata* amount with the other lienor defendants and no others;

k. Declaring that Kuritzky's legal and equitable share of the Stake is in the amount of $57,678.00 or, if the Stake is not sufficient to satisfy the claims of all defendants which have filed Mechanic's Liens against the Project, then declaring the extent of Kuritzky's claim in a *pro rata* amount with the other lienor defendants and no others;

l. Awarding All Electric the sum of $74,583.75, or such lesser *pro-rata* amount based on the claims of those other defendants which have filed Mechanic's liens against the Project, and paying such sum to All Electric out of the Stake;

m. Awarding AMEC the sum of $78,983.60, or such lesser *pro-rata* amount based on the claims of those other defendants which have filed Mechanic's liens against the Project, and paying such sum to AMEC out of the Stake;

n. Awarding Ascape the sum of $45,817.00, or such lesser *pro-rata* amount based on the claims of those other defendants which have filed Mechanic's liens against the Project, and paying such sum to Ascape out of the Stake;

o. Awarding Kuritzky the sum of $57,678.00, or such lesser *pro-rata* amount based on the claims of those other defendants which have filed Mechanic's liens against the Project, and paying such sum to Kuritzky out of the Stake;

p. Foreclosing All Electric's mechanic's lien in the amount of $74,583.75 against the Stake, as substitute security, and paying such sum to All Electric out of the Stake;

q. Foreclosing AMEC's mechanic's lien in the amount of $78,983.60 against the Stake, as substitute security, and paying such sum to AMEC out of the Stake;

r. Foreclosing Ascape's mechanic's lien in the amount of $45,817.00 against the Stake, as substitute security, and paying such sum to Ascape out of the Stake;

s. Foreclosing Kuritzky's mechanic's lien in the amount of $57,678.00 against the Stake, as substitute security, and paying such sum to Kuritzky out of the Stake;

t. Awarding All Electric a money judgment against Franchise, based on Franchise's breach of contract, in the amount of $74,583.75;

u. Awarding AMEC a money judgment against Franchise, based on Franchise's breach of contract, in the amount of $78,983.60;

v. Awarding Ascape a money judgment against Franchise, based on Franchise's breach of contract, in the amount of $45,817.00;

w. Awarding Kuritzky a money judgment against Franchise, based on Franchise's breach of contract, in the amount of $57,678.00;

x. Awarding All Electric a money judgment against Franchise and Chase, based on their unjust enrichment, in the amount of $74,583.75;

y. Awarding AMEC a money judgment against Franchise and Chase, based on their unjust enrichment, in the amount of $78,983.60;

z. Awarding Ascape a money judgment against Franchise and Chase, based on their unjust enrichment, in the amount of $45,817.00;

aa. Awarding Kuritzky a money judgment against Franchise and Chase, based on their unjust enrichment, in the amount of $57,678.00; and

bb. Granting these Answering Defendants such other, further and different relief as may be just and proper in the circumstances, together with the costs, disbursements and attorneys' fees of this action.

Dated: White Plains, New York
April 4, 2016

**WELBY, BRADY & GREENBLATT, LLP**
*Attorneys for Defendants All Electric Construction and Communication, LLC, AMEC Commercial, LLC, Ascape Landscape and Construction Corp. and Kuritzky Glass Co., Inc.*

Gregory J. Spaun, Esq.
11 Martine Avenue, Penthouse
White Plains, New York 10606
(914) 428-2100
(914) 428-2172 (fax)
gspaun@wbgllp.com

To: Christopher R. Belmonte, Esq.
Satterlee Stephens Burke & Burke LLP
*Attorneys for Plaintiff*
230 Park Avenue
New York, New York 10169
212-818-9200
212-818-9606 (fax)
cbelmonte@ssbb.com

Julia E. Braun, Esq.
Ivey, Barnum & O'Mara, LLC
*Attorneys for Defendant Tri-Star Building Corp.*
170 Mason Street
Greenwich, Connecticut 06830
203-661-6000
203-661-9462 (fax)
jbraun@ibolaw.com

Paul R Fitzgerald, Esq.
Michelson, Kane, Royster & Barger, PC
*Attorneys for Defendant Connecticut Mason Contractors, Inc.*
10 Columbus Blvd.
Hartford, Connecticut 06106
860-522-1243
pfitzgerald@mkrb.com

Charles I. Miller, Esq.
The Law Office of Charles I. Miller
*Attorneys for Defendant Engineered Building Products, Inc.*
PMB 108, 1245 Farmington Ave.
West Hartford, Connecticut 06457
860-656-6454
860-656-6179 (fax)
cm@lawofficecmiller.com

Andrew B. Nevas, Esq.
Verill Dana LLP
*Attorneys for Defendant Elite Interior Systems, Inc.*
33 Riverside Avenue
P.O. Box 5116
Westport, Connecticut 06881
203-222-0885
203-226-8025 (fax)
anevas@verrilldana.com

Jared M. Alfin, Esq.
Hassett & George, P.C.
*Attorneys for Defendant Innovative Structural Glass, Inc.*
945 Hopmeadow Street
Simsbury, Connecticut 06070
860-651-1333
860 651-1888 (fax)
jalfin@hgesq.com

Gregory J. Tembeck, Esq.
Law Offices of Gregory J. Tembeck, P.C.
*Attorneys for Defendant Franchise Contractors, LLC*
2500 Westchester Avenue
Purchase, New York 10577
914-313-5290
347-767-5524 (fax)
gtembeck@tembecklaw.com

Steven R. Kolodziej, Esq.
The Law Office of Steven R. Kolodziej, LLC
*Attorneys for Defendant Alcaide, Inc. d/b/a A&J Construction*
P.O. Box 874
Cheshire, Connecticut 06410
203-804-9378
skolodziej@kolodziejlaw.com

Mark F. Heinze, Esq.
Ofeck & Heinze, LLP
*Attorneys for Defendant United Metals & Glass, Inc.*
85 Main Street, Suite 204
Hackensack, New Jersey 07601
201-488-9900
201-488-4475 (fax)
markfheinze@gmail.com

Marc M. Isaac, Esq.
Law Office of Marc M. Isaac PLLC
*Attorneys for Defendant Construction Resources Corp. of New York*
23 South Main Street, Suite 30
Freeport, New York 11520
516-750-1422
866-342-2903 (fax)
misaac@mmipllc.com